RUSSELL QUADERER v. INTEGRITY MUTUAL INSURANCE COMPANY.

116 N. W. (2d) 605.

August 10, 1962—No. 38,472.

*Friedman & Friedman,* for appellant.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch* and *Charles T. Barnes,* for respondent.

ROGOSHESKE, JUSTICE.

Action by plaintiff to recover expense incurred in defending a personal injury suit brought against him and his son, Richard, upon a refusal of defendant to undertake the defense. Plaintiff appealed from a judgment for defendant.

The determinative question is whether, at the time of the accident on September 30, 1958, a Hudson automobile was covered under the terms of an insurance policy issued by defendant to plaintiff. In July 1958 defendant, through its agent, renewed two insurance policies (sold in January 1958) insuring plaintiff against liability for damages incident to the ownership and use of two automobiles described in the policies, one a Nash and the other an Oldsmobile. The policy in question covering the Oldsmobile was denoted a "Family Automobile Policy." Although plaintiff was the registered owner of the Oldsmobile at the time the policy was issued, the defendant through its agent was fully advised that plaintiff's son, Richard, then under 21 and living in plaintiff's household, was the principal user. The Nash was, as plaintiff declared, his "own car." Richard being the principal user of the Oldsmobile, the premium for liability coverage on that car was considerably larger than the premium on the policy covering the Nash.

Both policies were continued in force until October 8, 1958, when they were canceled and plaintiff notified thereof by two identical letters, in each of which defendant informed plaintiff: "For reasons peculiar to company operations we have found it advisable to discontinue writing insurance in the Duluth area."

While the policy in which the Oldsmobile was described as the "owned automobile" was in force, Richard was involved in an accident. The accident occurred on September 30, 1958. A personal injury suit was brought against plaintiff and Richard. After proper tender, the defendant refused to undertake the defense of the suit. The record is without dispute that plaintiff incurred an expense of $1,033.35 in conducting a successful defense for himself and his son. Richard was found to be free of negligence and thus plaintiff and he were absolved from liability.

It is true that, at the time of the accident, Richard was driving a Hudson automobile. The facts relating to its acquisition are without substantial dispute. It was purchased by Richard and his father about a week before the accident with the intention of replacing the Oldsmobile because Richard and his father decided the finance payments Richard was making on the Oldsmobile were too oppressive. Registered title to the Hudson, like that of the Oldsmobile, was placed in plaintiff. He advanced the purchase price of $135 for the Hudson upon Richard's promise of repayment. At the time of the accident the Oldsmobile was still in plaintiff's possession but was not being used by him. The record is silent as to whether or not Richard had permission to, or did, use the Oldsmobile, except for plaintiff's declaration, unspecified as to time, " '* * * I will take the Olds,' and I took that Olds and let it go for the back payments due on it." Sometime subsequent to the accident the Oldsmobile was sold, either by the finance company or by plaintiff, for the balance due the finance company. Immediately following the accident plaintiff and Richard notified an agent of defendant, through whom the policies were purchased, of the accident, and 4 days after the accident further informed him that the Hudson was the automobile involved and that it was acquired with the intention to replace the Oldsmobile. Defendant's agent then endorsed on his records that the Hudson was to replace the Olds-

mobile and promptly notified defendant's adjuster of the fact of an accident.

Defendant refuses to reimburse plaintiff for expenses on the ground that the Hudson automobile driven by Richard and involved in the accident was not the Oldsmobile described in the policy and that the Hudson was owned by Richard, not plaintiff, and was therefore not an "owned automobile" as defined in the policy.

Plaintiff insisted upon trial and here that there was coverage of the Hudson as it was included in the definition of "owned automobile," urging primarily, although somewhat imprecisely, that it was included within the policy provisions as a replacement automobile. The essentials of that part of the policy read as follows:

"Family Automobile Policy Amendment

"It is agreed:

"1. That the definition of 'owned automobile' is amended to read:

" 'Owned automobile' means:

"(a) a private passenger or utility automobile described in the policy,

"(b) a trailer owned by the named insured, provided with respect to Part III it is described in the policy,

"(c) a private passenger or utility automobile or, with respect to Part III, a trailer, ownership of any of which is acquired by the named insured during the policy period, provided acquisition of such automobile or trailer is reported to the company within 30 days of the date of delivery of the automobile or trailer to the insured, and

"(1) the company insures all private passenger or utility automobiles or trailers owned by the named insured on the date of such delivery, or

"(2) it replaces a described automobile or trailer; and includes a temporary substitute automobile."

The trial court found, upon the issue of ownership, that Richard, not plaintiff, was the owner of the Hudson. Further, that plaintiff—

"* * * had taken no steps, nor given any notice to have said automobile covered by the insurance policy issued to him and described herein; nor did plaintiff give notice of a replacement or substitution

of the Hudson automobile for the Oldsmobile automobile covered by the said policy * * *."

In a memorandum attached to the decision the court concluded:

"* * * the fact question to be determined was whether or not the Hudson automobile, prior to the accident, had become a replacement of the insured Oldsmobile. The Court has concluded that the testimony does not support a favorable finding for plaintiff on this issue."

There is sufficient evidence to support the court's findings and decision that the Hudson at the time of the accident was in fact owned by Richard, not plaintiff, and that it did not in fact "replace" the Oldsmobile and, therefore, was not a replacement automobile within the contemplation of the policy provisions. We cannot agree, however, that it was not covered by the policy. We have concluded that the language of the policy defining "owned automobile" included the Hudson as a newly acquired additional automobile. The essentials of provision (c), which might be termed an automatic coverage for newly acquired automobiles, are:

" 'Owned automobile' means * * * a private passenger * * * automobile * * * ownership * * * of which is acquired * * * during the policy period, provided acquisition of such automobile * * * is reported to the company within 30 days of the date of delivery of the automobile * * * to the insured, and * * * the company insures all * * * automobiles * * * owned by the named insured on the date of such delivery * * *."

This language clearly contemplates coverage, for some period, of an automobile or automobiles in addition to the one described in the policy. The record supports a conclusion that the defendant was the insurer of all the automobiles of which plaintiff was the registered owner. The pivotal question is: What meaning should be given to the words "ownership" and "owned" selected by the defendant in these policy provisions and under the facts of this case?

In construing the terms of the policy, it must be kept in mind that the public has an interest in having automobiles covered by liability

insurance.[1] Further, it is well settled that any ambiguous terms of an insurance policy are to be construed in favor of the insured and against the insurer who is charged with having chosen the language of the policy.[2] In their context the terms "ownership" and "owned" are ambiguous. It is not clear whether they mean registered owner, or one having legal title to the vehicle, or simply one who may be exposed to liability as a registered owner pursuant to statutes governing motor vehicle registration and the Safety Responsibility Act.[3] Thus the policy should be construed to effect coverage if this can be done without violence to its plain language and underlying purpose.

The apparent purpose sought to be achieved by defendant in the sale of this policy was to insure plaintiff against all risks arising out of the operation of the automobile described in the policy and, in addition, any automobile he acquired to replace it, or acquires as an added automobile where defendant is the insurer of all his family automobiles. The policy is obviously designed to meet the liability insurance needs of today's two-or-more-car families who customarily trade in and replace family automobiles quite frequently. Surely it can also be said that this type of automatic insurance coverage was designed to enable insurance companies, such as defendant, to sell all of the automobile liability insurance needed by a two-car family. Premiums for the policy covering an automobile used principally by the younger members of a family are calculated accordingly. Thus the terms, as used in the provisions in question, were intended to have a broader meaning than legal title. Most likely the words as used were intended to include any interest in an automobile which might expose one to liability by reason of the use of such automobile by the insured or members of his household. It was so understood by defendant's agent

---

[1]American Ind. Co. v. Davis (M. D. Ga.) 155 F. Supp. 47, 51; Minn. St. 170.25.

[2]See, e. g., Patterson v. Patterson (D. Minn.) 178 F. Supp. 633; Chase v. General Acc. Fire & Life Assur. Corp. Ltd. 225 Minn. 363, 30 N. W. (2d) 633; Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790; 9 Dunnell, Dig. (3 ed.) § 4659.

[3]Minn. St. 168.15 and 170.54; Carey v. Broadway Motors, Inc. 253 Minn. 333, 335, 91 N. W. (2d) 753, 755.

who sold the policies to plaintiff according to his own testimony. Moreover, it is clear that in the suit for damages plaintiff could have been held liable for any negligent operation of the Hudson by his son under the vicarious liability provisions of the Safety Responsibility Act.[4] Liability in that suit was defeated on the issue of negligence. However, ownership in the son was a defense plaintiff could have asserted in that suit, and a finding by the jury that plaintiff was the owner for the purposes of the Safety Responsibility Act would not have been unlikely, even though the trial court reached a contrary finding under the evidence before us. Although we believe the court was correct in finding that Richard owned the Hudson, this finding cannot be taken to mean that he was the sole owner. The evidence would not support such a finding. It is undisputed the plaintiff paid the entire purchase price for the Hudson and was the registered owner. At the time policy was issued, as well as at the time of the accident, Richard was a member of his household. The evidence compels a conclusion that the interest of plaintiff in the Oldsmobile differed in no material way from his interest in the Hudson. Similarly, Richard's interest and use of both vehicles was substantially identical. It is, therefore, apparent that plaintiff had a sufficient interest in both the Oldsmobile and the Hudson to require liability insurance protection.

In the light of the foregoing, we are constrained to hold that the terms "ownership" and "owned by the named insured" under the provisions of this family automobile policy include any insurable interest in the automobile described in the policy. An insurable interest exists when the named insured may be held liable for damages incident to the operation and use of such automobile. It follows that the phrase "owned automobile" as used in the policy included not only the Oldsmobile described in the policy but also the Hudson in which the named insured acquired an insurable interest at a time when defendant insured all automobiles for which he had legal title or any insurable interest.

While the Hudson is thus to be regarded as owned by plaintiff within the meaning of the policy, we cannot agree with plaintiff that the

---

[4] § 170.54.

evidence was sufficient to support a finding that it replaced the Oldsmobile and was covered by the replacement provision. The court found, and the evidence is undisputed, that the Oldsmobile was still in his possession at the time of the accident. The language of the policy appears to contemplate a replacement in fact. If such construction is correct, an intention to replace is not enough. Thus the Hudson under this record cannot be regarded as a replacement of the automobile described in the policy.

Defendant asserts, and the lower court held, that notice of the acquisition of the Hudson 4 days after the accident to defendant's agent was not compliance with the notice provisions of the policy quoted above. We do not agree.

The policy requires no form of notice and an oral notice is therefore sufficient. Plaintiff had 30 days within which to report such acquisition. He did so to defendant's agent well within that time even though it was subsequent to the accident. Coverage of the Hudson is, by its terms, properly characterized as automatic coverage and several cases now hold that no notice whatsoever need be given where a coverage question arises during the period in which notice is required to be given.[5]

Upon argument plaintiff requested an allowance of attorney's fees for prosecuting this action and this appeal. The complaint asked for no such relief. The issue regarding such expenses was therefore not litigated and plaintiff's request must be denied.

The judgment of the trial court is reversed with directions to enter judgment for the plaintiff in the sum of $1,033.35.

---

[5]Inland Mutual Ins. Co. v. Stallings (D. Md.) 162 F. Supp. 713; Schaller v. Aetna Cas. & Surety Co. 280 App. Div. 988, 116 N. Y. S. (2d) 729; 7 Appleman, Insurance Law and Practice, § 4293, p. 87.