## EDWARD D. DIKE v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY.

170 N. W. (2d) 563.

August 29, 1969—Nos. 41399, 41466.

*Carl E. Erickson,* for appellant.

*Ryan & Ryan* and *Joseph W. Ryan,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Defendant appeals from a judgment entered pursuant to a special verdict in a third-party declaratory judgment action to establish automobile liability insurance coverage and from the trial court's denial of its alternative motion for judgment notwithstanding the verdict or a new trial.

On September 7, 1962, plaintiff, a wholesale and retail bait dealer, obtained automobile liability insurance on his 1959 pickup truck from the defendant through the Hamilton Insurance Agency in Crosby, Minnesota. The Hamilton Insurance Agency, consisting of Harold Hamilton and his son Earl, had its office on a balcony of a Crosby hardware store formerly owned by Harold. This insurance was continued in force by annual endorsements, the last of which extended the policy period from September 7, 1966, to September 7, 1967.

In 1964, plaintiff traded in his 1959 truck on a new Chevrolet pickup. He called the Hamilton Agency, and they substituted the new pickup for the old one under the same policy. Sometime before November 1965, plaintiff also acquired a 1952 Jeep. Since he did not intend to use it on a public highway but rather to use it only for clearing snow around his home and occasionally to haul minnows for his business, he did not procure any insurance on it. On Saturday, November 12, 1966, the 1964 pickup was completely destroyed when plaintiff crashed into a tree while returning from deer hunting.

Plaintiff testified that on November 12, 1966, after the accident, he called Harold Hamilton's home for information regarding recovery for the wrecked pickup and insurance for the Jeep, which he now intended to use on the highways. Mrs. Harold

Hamilton told plaintiff that her husband was deer hunting and that she could do nothing about it. The next day plaintiff's wife called Mrs. Earl Hamilton, plaintiff's niece, reported the accident, and requested coverage for the Jeep. Mrs. Earl Hamilton explained that she did not know much about insurance, but said that she would give her husband the message when he returned from deer hunting.

On November 15 plaintiff and his wife took the Jeep's registration card and went to both Harold and Earl Hamilton's homes in Crosby to finalize the insurance coverage for the Jeep but found no one at home. They did not go to the hardware store, since neither had done any insurance business there after Harold had sold the store, and neither knew that the Hamiltons still maintained an office there. Earl testified that when he returned home on November 15, his wife told him about the destruction of plaintiff's pickup, but did not mention the request for insurance coverage on the Jeep. On November 16, Mrs. Earl Hamilton called plaintiff's wife and told her that Earl said that he "would take care of things."

Four days later, on November 19, 1966, plaintiff, while driving the Jeep, was involved in a collision with another vehicle. Two occupants of the other vehicle were killed and plaintiff was seriously injured. On November 22, while plaintiff was still in the hospital, defendant took a statement from him to the effect that he had not mentioned insurance for the Jeep during his conversation with Mrs. Harold Hamilton after the pickup was wrecked. Plaintiff received no copy of that statement.

Subsequently plaintiff was sued by the trustee for the heirs of one of the victims of the collision under Minn. St. 573.02. Plaintiff then brought this third-party declaratory judgment action against defendant to determine whether or not defendant had afforded liability coverage for the Jeep. During the trial of this action, the court ruled that Minn. St. 602.01 precluded defendant's use of the prior inconsistent statement taken from

plaintiff in the hospital as impeachment. At the close of the trial, the following special question was submitted to the jury:

"Did the policy of insurance issued by Farmers Mutual now know as American Family Insurance Company, provide liability coverage to the plaintiff, Edward Dike, while operating the 1952 Jeep automobile on November 19, 1966?"

The jury answered "Yes."

The trial court accepted this finding and accordingly concluded that defendant had afforded liability coverage for the Jeep under plaintiff's policy prior to the November 19 accident.

On appeal defendant contends (1) that plaintiff's liability insurance policy did not provide automatic coverage for the Jeep; (2) that the evidence does not support the jury's implicit finding that plaintiff and defendant agreed to substitute the Jeep for the pickup under the policy; and (3) that the trial court erred in refusing to permit defendant to introduce, for the purpose of impeachment, the statement taken from plaintiff in the hospital.

■ The trial court failed to hold either that the Jeep was, as a matter of law, automatically covered by the policy or that it was not. While the trial court may have intended to submit this issue to the jury, its instructions, as we read them, in effect submitted the question of whether or not the parties had specifically agreed that the Jeep would be covered under the policy.

The policy provided under paragraph IV for automatic coverage of a vehicle not described in the policy as follows:

"(4) Temporary Substitute Automobile—under coverages A, B and C(a) [liability], an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"(5) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile

owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and C(a) if the newly acquired automobile replaces an owned automobile covered by this policy. * * * The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

It is clear that the Jeep was not covered under paragraph IV (4) as a "Temporary Substitute Automobile" since it was owned by plaintiff. It is also clear that all of plaintiff's automobiles were not insured by defendant. Thus, the only way the Jeep could have been automatically covered is if, as plaintiff contends, it had qualified under paragraph IV (5) as a "Newly Acquired Automobile," which is defined as "an automobile, ownership of which is acquired by the named insured or his spouse * * *, if * * * it replaces an automobile owned by either and covered by this policy."

Construction of this provision is a matter of first impression in this state, but it has been construed in varying factual contexts in a number of other jurisdictions. With only two exceptions, every court which has considered this provision has held that it is not ambiguous and that in order to be "newly acquired" within its plain meaning, an automobile must have been acquired after the commencement of the policy period and must replace the automobile described in the policy. E.g., Lynam v. Employers' Lia. Assur. Corp. (D. Del.) 218 F. Supp. 383, affirmed (3 Cir.) 331 F. (2d) 757; Commercial Standard Ins. Co. v. Central Produce Co. (M. D. Tenn.) 42 F. Supp. 31, affirmed sub nom. Central Produce Co. v. Commerical Standard Ins. Co. (6 Cir.) 122 F. (2d) 1021; Coleman v. Atlantic Nat. Ins. Co. (Fla. App.) 166 So. (2d) 620; Country Mutual Ins. Co. v. Murray, 97 Ill. App. (2d) 61, 239 N. E. (2d) 498; Howe v. Crumley, Jones & Crumley Co.

44 Ohio L. Abs. 115, 57 N. E. (2d) 415; Brown v. State Farm Mutual Auto. Ins. Co. (Ky. App.) 306 S. W. (2d) 836; Marquez v. Dairyland Mutual Ins. Co. 78 N. M. 269, 430 P. (2d) 766; State Farm Mutual Auto. Ins. Co. v. Shaffer, 250 N. C. 45, 108 S. E. (2d) 49; Utilities Ins. Co. v. Wilson, 207 Okla. 574, 251 P. (2d) 175.

The only two exceptions to that rule have been National Ind. Co. v. Giampapa, 65 Wash. (2d) 627, 399 P. (2d) 81, and Boston Ins. Co. v. Smith (Fla. App.) 149 So. (2d) 68. In Giampapa, in a fact situation almost identical to the one herein involved, it was held (6-3) that an identical provision was ambiguous and should, therefore, be construed most favorably to protect the insured. The dissenters vigorously protested that the majority's opinion was inconsistent both with the authorities and with the clear meaning of the words of the policy. In Boston Ins. Co. v. Smith, *supra*, the court also held (2-1) that this provision was ambiguous and should be construed in favor of coverage. However, another district of the same court, in a later case, unanimously applied the contrary majority rule in a fact situation nearly identical to the instant case without ever mentioning Boston Ins. Co. v. Smith. Coleman v. Atlantic Nat. Ins. Co. *supra*. See, also, Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. v. Traister (Fla.App.) 173 So. (2d) 153. While the court in the Coleman case tried to draw a distinction between policies extended by issuance of a new policy, as therein involved, and policies extended by endorsement such as the one in our case, we believe, as plaintiff himself concedes, that this is a distinction without any real difference. Thus, only Washington has, in a split decision, unequivocally adopted the minority rule.

It is fundamental that ambiguous insurance policy provisions must be construed in favor of the insured.[1] However, we cannot so construe a policy contrary to its plain, unequivocal language.

---

[1] Hammer v. Malkerson Motors, Inc. 269 Minn. 563, 132 N. W. (2d) 174; Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 116 N. W. (2d) 605.

We believe that plaintiff's policy plainly requires that an automobile be acquired as a replacement for the automobile described in the policy in order for paragraph IV (5) to apply. In Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 388, 116 N. W. (2d) 605, 608, which did involve a "newly acquired" automobile, we stated:

"The apparent purpose sought to be achieved by defendant in the sale of this policy was to insure plaintiff against all risks arising out of the operation of the automobile described in the policy and, in addition, any automobile he *acquired to replace it* * * *." (Italics supplied.)

Plaintiff acquired the Jeep as an additional vehicle long before he wrecked the pickup. It would be contrary to the undisputed facts to say that he acquired the Jeep to replace the pickup.

Thus, consistent with its language and purpose, it is our opinion that the "newly acquired" provision must be interpreted, under the undisputed facts of this case, as affording coverage only to an automobile acquired as a replacement and actually substituted for the automobile described in the policy. Accordingly, we hold that plaintiff's Jeep, as a matter of law, was not automatically covered by the policy.

■ Defendant also contends, in essence, that the evidence is insufficient to support a finding that its agent agreed to provide liability insurance coverage for plaintiff's Jeep. Defendant, however, does not deny that the Hamiltons were its general agents or that they had authority to orally substitute one automobile for another under an existing policy where, as here, there would be no increase in the insured's premium. See, Julien v. Spring Lake Park Agency Inc. 283 Minn. 101, 166 N. W. (2d) 355; Morrison v. Swenson, 274 Minn. 127, 142 N. W. (2d) 640; Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28. See, also, Masschusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co. (8 Cir.) 61 F. (2d) 264, 92 A. L. R. 218.

In 1964 plaintiff had substituted his new pickup for the old one under the existing liability insurance policy by a simple tele-

phone call to the Hamilton Agency. After the pickup was wrecked, plaintiff's wife called Earl Hamilton's home and talked to his wife. She specifically asked about liability coverage on the Jeep. Earl Hamilton testified that his wife did not convey Mrs. Dike's request for liability coverage on the Jeep to him when he returned home, but mentioned only the accident with the pickup. However, his wife did not deny that she communicated the entire message to him. Shortly thereafter, Mrs. Earl Hamilton called plaintiff's wife and told her that "Earl would take care of things." Plaintiff's wife, having made two requests, assumed that the "things" which Earl would take care of included insurance for the Jeep.

Thus, viewing this evidence, which is admittedly weak, most favorably to plaintiff as we must, the jury could reasonably have discounted Earl Hamilton's testimony, since his wife failed to corroborate it, and concluded that defendant's general agent, Earl Hamilton, acting upon Mrs. Dike's request for liability insurance coverage on the Jeep conveyed to him by his wife, agreed to provide such coverage by substituting the Jeep for the wrecked pickup under the existing policy; that his wife so informed Mrs. Dike; that plaintiff was justified in assuming, based upon this communication and past practice, that the Jeep was covered; and that defendant, because of the conduct of its agent, is estopped from denying coverage.

■ Defendant, however, argues that much of plaintiff's testimony would have been seriously impeached by inconsistencies contained in the statement which he gave defendant in the hospital prior to the trial and that the trial court committed reversible error in excluding that statement under Minn. St. 602.01, which provides:

"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent in the trial *of any action for damages for injuries sustained by such person* or for the death of such person as the result of such injuries. No statement can be used

as evidence in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made." (Italics supplied.)

This question is controlled by our recent decision in Hillesheim v. Stippel, 283 Minn. 59, 166 N. W. (2d) 325, in which we held that this statute does not bar the admission of such statements, even though the injured person received no copy, in an action such as this one which is not for the recovery of damages for personal injury. Because plaintiff's statement was impeaching in fact and materially contradicted key parts of his testimony, its exclusion was prejudicial, entitling defendant to a new trial.

Reversed and new trial granted.