WILLIAM L. FITCH AND OTHERS v.
ROGER BYE AND OTHERS.
PREFERRED RISK MUTUAL INSURANCE
COMPANY, APPELLANT.

180 N. W. (2d) 866.

October 16, 1970—No. 42063.

---

*Karlins, Grossman, Karlins, Siegel & Brill, Sheldon D. Karlins,* and *Robert L. Lowe,* for appellant.

*Coulter, Nelson & Sullivan, V. Owen Nelson,* and *Lee LaBore,* for respondent plaintiffs.

*Lindquist & Vennum, John B. Winston,* and *Kenneth F. Kirwin,* for respondent cross-claimants.

Heard before Knutson, C. J., and Nelson, Otis, Sheran, and James F. Murphy, JJ.

OTIS, JUSTICE.

This is an appeal from a declaratory judgment determining that defendant Preferred Risk Mutual Insurance Company affords coverage to defendants Bye for damages occurring to plaintiffs Fitch arising out of a two-car automobile collision. Since the Bye vehicle was not described in the Preferred policy, the issue is whether Bye acquired ownership of it as a replacement of the described automobile within the meaning of the Preferred policy.

In July 1963, Bye purchased a 1955 Ford for which he secured liability coverage from Preferred. In November 1963, he purchased a 1957 Plymouth, which was ultimately involved in the accident with the Fitches. Insurance for that car was also secured from Preferred. In July 1964, the Plymouth broke down while Bye was on a trip and he purchased a 1955 Chevrolet with which he towed the Plymouth back to Minnesota. The following month he sold the 1955 Ford and bought a 1957 Ford which he also insured with Preferred. On October 20, 1964, Bye cancelled

his insurance on the Plymouth and transferred it to the 1955 Chevrolet, which up to that time was not a described vehicle. From that date until the accident on May 6, 1965, the Plymouth was not a described vehicle. From August 1964 until May 1965, Bye made repairs on the Plymouth, which he had towed to a heated garage in Onamia.

The circumstances which govern our construction of the policy are included in a stipulation of the parties as follows:

"During the winter months while Mr. Bye was driving the 1957 Ford, he observed the fact that it was starting to cause trouble and in late April he observed that it was missing on two cylinders.

"On May 1, 1965, Bye drove the 1957 Ford to Onamia for the weekend. In order to determine the condition of the engine he removed the head from the block in the Ford automobile and observed that one piston was blowing into the other and the head gasket 'was completely shot'. He decided that the Ford needed extensive repair before it could again be driven. He intended to repair it at a later date and immediately began to complete the repair work on the Plymouth automobile so he would have it to return to Minneapolis.

"He completed his work on the Plymouth automobile late on Sunday evening, May 2, 1965, and that evening drove the Plymouth automobile back to Minneapolis. On May 6, 1965, Mr. Bye's wife, Donna Jean Bye, while driving the 1957 Plymouth automobile, was involved in the accident with the plaintiff, Eileen Ann Fitch. Prior to that date, neither Mr. Bye nor Mrs. Bye had notified Preferred Risk or any of its agents, that the 1957 Ford was inoperable and that the 1957 Plymouth was again operable.

"At no time since the weekend of May 2, 1965, has the 1957 Ford automobile been operated nor has it been capable of operation. It has been parked with the engine head removed from the block at Onamia."

The provisions of Bye's policy with Preferred which are applicable are as follows:

"(d) 'owned automobile' means the private passenger, farm or utility automobile (or trailer) described in the declarations, and as herein defined, any replacement automobile, any additional automobile, any temporary substitute automobile and any trailer owned by the insured;

"(e) 'replacement automobile' means a private passenger, farm or utility automobile of which the named insured acquires ownership, provided it replaces the owned automobile."

The trial court found that the policy "is ambiguous and uncertain as it relates to the question of whether under the circumstances the 1957 Plymouth was 'any replacement automobile' under the terms of said policy." Consequently, the court found that the Plymouth was a replacement of the 1957 Ford; that Preferred was obliged to defend the Byes; that Preferred is liable to the Fitches for the agreed amount of their damages in the amount of $9,850; and that Preferred was liable to the Byes for attorney's fees incurred by them in defending against the Fitches' claim as well as those incurred in the declaratory judgment action.

In an accompanying memorandum, the court expressed the opinion that it was not necessary under the policy for Bye to have acquired the Plymouth *after* insurance was written on the 1957 Ford. The court further noted that its decision, based on the stipulation and depositions, assumed that Bye intended to repair the Ford and that it could be repaired. In denying a motion for amended findings, the court observed that the issue was a close one.

1. The first question is whether the phrase "acquires ownership" is ambiguous as contended by respondents. It should be borne in mind that the Plymouth which was involved in the accident was purchased in November 1963, while the 1957 Ford, which respondents claim it replaces, was not purchased until

August 1964. Obviously, therefore, the Plymouth was not acquired for the purpose of replacing the Ford. Nevertheless, respondents argue that the word "acquires" may be construed to mean simply "owns." As an extension of this contention, they suggest that an owner "acquires" a car within the meaning of the policy although he already has title and possession of the vehicle at the time the policy becomes effective. We do not agree. Clearly, the use of the words "acquires ownership" anticipates future events subsequent to the commencement of the policy period. It would not be reasonable to thus describe a car which the insured already owns when the policy is issued. If that were the case, there would be no necessity for using the cumbersome expression "acquires ownership."

2. The second question is whether by repairing the Plymouth to make it operable after Bye removed the head from the block in the Ford, he replaced the Ford, which was described in the policy, with the Plymouth, which was not.

Respondents cite a number of cases for the proposition that the language of the policy permits coverage where title and possession of the described car are retained but it is not driven because of needed repairs. Merchants Mutual Cas. Co. v. Lambert, 90 N. H. 507, 11 A. (2d) 361, 127 A. L. R. 483; Glens Falls Ins. Co. v. Gray (5 Cir.) 386 F. (2d) 520; National Ind. Co. v. Giampapa, 65 Wash. (2d) 627, 399 P. (2d) 81.

In the New Hampshire case, the trial court found the described car was "worn out, out of repair, and not fit to be driven on the public highway." 90 N. H. 508, 11 A. (2d) 361, 127 A. L. R. 484. In the Glens Falls case, the court held that a car was not "acquired" before it was operable. The Washington decision, more nearly in point, with three dissents, held that a car which had become permanently inoperable and was therefore junked and not used again was replaced within the meaning of the policy. We think that the correct rule was applied in Yenowine v. State Farm Mutual Auto. Ins. Co. (6 Cir.) 342 F. (2d) 957. There, the court held that a described car which was not "incapable of

further service" and had not been disposed of was not "replaced" within the meaning of the policy. 342 F. (2d) 961.

Although the language in the policy which was the subject of our decision in Dike v. American Family Mutual Ins. Co. 284 Minn. 412, 170 N. W. (2d) 563, referred to *"newly* acquired automobile," we see no substantial difference between the words "newly acquired" and the word "acquired" as they are used in ordinary parlance. In Dike, as in the case at hand, the vehicle being driven in the accident was purchased many months before the described truck was bought. By analogy, it would fly in the face of commonsense to hold that under such circumstances the Plymouth was acquired to replace the Ford. We find support for this conclusion in Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 116 N. W. (2d) 605. In that case, we held that an undescribed car is not a replacement if the described vehicle remains in the insured's possession while in the process of being sold, even though the described car was not being used during that period.

There is language in St. Paul Fire & Marine Ins. Co. v. Nyquist, 286 Minn. 157, 175 N. W. (2d) 494, which suggests by way of dictum that where an owner has only one policy on one car, the policy will afford coverage for other cars if only one vehicle at a time is functioning. Lest the scope of that decision be too broadly construed, we restrict the effect of the language in the Nyquist case to the facts which gave rise to that decision and now hold that an owned vehicle not described in the policy replaces a described vehicle under only two conditions: (1) When the replaced described vehicle is not operable and for practical purposes cannot be rendered operable; or (2) the described vehicle has been sold, or possession has been transferred for purposes of sale or because title has otherwise been divested. Any other holding would encourage the shuffling of automobiles which are not described, to afford coverage without paying a premium, resulting in the inevitable litigation which such situations spawn. The case at hand is typical of this kind of maneuver-

ing. Bye owned three cars from July 1964 until May 1965 but secured only two policies of insurance.

Were we to hold that the Plymouth, acquired in November 1963, replaced the Ford, acquired in August 1964, because two cylinders in the Ford were missing, and for that reason Bye saw fit to remove the head, we would be doing violence to the obvious intent of the contract. It is not difficult to imagine the factual disputes which would emerge if, without previously disclosing ownership, the insured were permitted to secure coverage for a replacement vehicle simply because the described vehicle had a flat tire, a dead battery, or had run out of gasoline.

We have repeatedly held that it is not our function or prerogative to redraft insurance contracts, even to afford protection for the public, where the language of the contract is clear and unambiguous. Nor have we a right to thrust on the insurer a risk it did not accept and for which it received no premium. Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 115 N. W. (2d) 40.

"* * * [C]ourts are not at liberty to use a process of judicial construction to graft into the plain language of a policy an intention to afford coverage when no such intention appears from the language of the policy or otherwise." Gabrelcik v. National Ind. Co. 269 Minn. 445, 447, 131 N. W. (2d) 534, 536.

As we said in Boedigheimer v. Taylor, 286 Minn. 323, 327, 178 N. W. (2d) 610, 613—

"* * * Unambiguous words are to be given their natural and ordinary meaning taken in their popular sense, giving effect to the purposes of the document as a whole."

We therefore conclude that the Plymouth which Bye owned and operated at the time of this accident was not a replacement for the Ford and was consequently not covered by the Preferred Risk policy.

Reversed.

Mr. Justice William P. Murphy and Mr. Justice Peterson took no part in the consideration or decision of this case:

Mr. Justice Kelly, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.