**AUSTIN MUTUAL INSURANCE COMPANY, et al., Appellants,**

v.

**MODERN SERVICE INSURANCE COMPANY, Respondent,**

**James Lee Lundquist, Respondent.**

No. 46353.

Supreme Court of Minnesota.

April 29, 1977.

Cousineau, McGuire, Shaughnessy & Anderson, Henry A. Cousineau, Jr., Harold J. W. Sweet, Minneapolis, for appellants.

Quinlivan & Williams, Gerald G. Williams and Daniel Rethmeier, St. Cloud, for Modern Serv. Ins. Co.

Angstman, Loren & Schaupp, and Norman J. Loren, Mora, for Lundquist.

Heard before KELLY, TODD, and MacLAUGHLIN, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiffs appeal from a declaratory judgment of the Kanabec County District Court holding that an insurance policy issued by defendant insurance company provides no liability coverage for claims arising out of the accident that generated this action. We affirm.

Defendant James Lundquist was the owner and operator of a car that was involved in an accident on June 24, 1972. Plaintiff Dale Roeschlein, a passenger in Lundquist's car, sustained injuries in the accident. His father, John Roeschlein, appointed guardian ad litem, and their insurance company, Austin Mutual Insurance Company, which provided uninsured-motorist coverage, brought suit to determine the applicability of a policy issued by Lundquist's insurer, defendant Modern Service Insurance Company. The facts are undisputed.

At the time of the accident Lundquist was driving a 1964 Chevrolet Corvette, a vehicle not then described in his insurance policy. Lundquist had secured a policy with Modern Service in February 1969. The policy was renewed quarterly and in force the day of the accident; its coverage, however, extended to a succession of vehicles. Initially it covered a 1961 Ford; coverage was

then transferred to a 1956 Chevrolet Belaire on August 27, 1969; to a 1962 Chevrolet Impala on April 19, 1971; and on July 30, 1971, to the 1964 Corvette in question. On November 20, 1971, coverage returned to the 1956 Belaire, which remained the automobile described in the policy through June 24, 1972, the date of the accident. Lundquist transferred his coverage to the 1956 Belaire because the Corvette on that date was disabled and completely inoperable.

On May 1, 1972, the 1956 Belaire suffered a blown-out engine and was abandoned by Lundquist, who drove either his father's truck or brother's car during the rest of the month. Nevertheless, at the end of May, Lundquist made the scheduled premium payment on the policy which extended coverage to the 1956 Belaire. Lundquist had been working on the 1964 Corvette that winter and finally repaired it by mid-June, having had to replace the engine, among other things. In the meantime, during the first week of June, Lundquist had sold and transferred possession of the disabled 1956 Belaire. The 1964 Corvette was then Lundquist's only car.

The trial court found that the 1964 Corvette was not a "newly acquired automobile" within the terms of Lundquist's insurance policy. It concluded therefore that Lundquist was an uninsured motorist the day of the accident. From that judgment, plaintiffs appeal.

At issue is the proper interpretation of part IV of defendant's insurance policy, defining the "automobile" for which insurance coverage is provided. In pertinent part, the provisions state:

"IV—DEFINITIONS

" 'automobile,' * * * means

\* \* \* \* \* \*

"4. Newly Acquired Automobile—An automobile of the type described in this policy, *ownership of which is acquired by the named insured* (a) *if it replaces an automobile owned by him and described*

*in this policy,* or (b) if an additional automobile, if the company insures all automobiles owned by him on the date of its delivery to him and (c) he, in either case, notified the company within 30 days following delivery date." (Italics supplied.)

This court has had occasion to construe similar insurance provisions in recent years. In order for plaintiffs to prevail under the above paragraph 4, defining a "Newly Acquired Automobile," they must demonstrate that the 1964 Corvette was (1) acquired as a replacement and (2) actually substituted for the automobile described in the policy. *Dike v. American Family Mutual Ins. Co.,* 284 Minn. 412, 418, 170 N.W.2d 563, 566 (1969). We do not reach the issue of fulfillment of the second requirement, see *Fitch v. Bye,* 288 Minn. 344, 349, 180 N.W.2d 866, 869 (1970), because the first requirement is not satisfied on these facts.

With respect to that requirement, plaintiffs assert that the policy language is ambiguous and that, because of the public policy favoring coverage and the construction canon that insurance policies be construed in favor of the insured, *Quaderer v. Integrity Mutual Ins. Co.,* 263 Minn. 383, 387, 116 N.W.2d 605, 608 (1962), it encompasses the 1964 Corvette owned by Lundquist since July 1971. This argument was rejected in *Dike v. American Family Mutual Ins. Co. supra.* There, we surveyed the law of various jurisdictions and found that a vast majority held "that in order to be 'newly acquired' within its plain meaning, an automobile must have been acquired after the commencement of the policy period and must replace the automobile described in the policy." 284 Minn. 416, 170 N.W.2d 566. We concluded:

"\* \* \* We believe that plaintiff's policy plainly requires that an automobile be acquired as a replacement for the automobile described in the policy in order for paragraph IV (5)[1] to apply. \* \* \* Plaintiff acquired the Jeep as an additional vehicle long before he wrecked the pickup. It would be contrary to the un-

---

1. The provision construed in *Dike v. American Family Mutual Ins. Co.,* 284 Minn. 412, 170

N.W.2d 563 (1969) is virtually identical to the one presently at issue. There, the policy pro-

disputed facts to say that he acquired the Jeep to replace the pickup." 284 Minn. 417, 170 N.W.2d 566.

Accord, *Fitch v. Bye,* 288 Minn. 344, 347, 180 N.W.2d 866, 869 (1970).

█ The 1964 Corvette which was purchased in July 1971 was not acquired to replace the 1956 Belaire. Indeed, the 1964 Corvette was, prior to its disablement, designated as the insured auto. Plaintiffs do not argue that because the 1964 Corvette was inoperable until the 1956 Belaire was transferred to a third party, the Corvette was therefore "newly acquired" in the sense that it again became functional. The plain meaning of the policy is to the contrary (*"ownership* of which is acquired"), as is the weight of the case law. See, e. g., *Allstate Ins. Co. v. Stevens,* 445 F.2d 845 (9th Cir. 1971). Our determination is reinforced by additional language in the policy which reads:

> "As respects a newly acquired automobile which replaces an automobile owned by the named insured, such coverages under this policy which applied to the replaced automobile shall apply to the newly acquired automobile."

█ Plaintiffs alternatively assert that Lundquist has an equitable right to coverage. This right is said to arise from the fact that Lundquist made the necessary premium payments to keep the policy in force and received no coverage therefor at the time of the accident, unless the 1964 Corvette was insured. These facts alone do not give rise to an equitable right to coverage.

Affirmed.

---

vided: "(5) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and C(a) if the newly acquired automobile replaces an owned automobile covered by this policy. * * *" 284 Minn. 415, 170 N.W.2d 565.