**IOWA NATIONAL MUTUAL INSURANCE COMPANY, Plaintiff,**

**v.**

**Gerald Minor McGHEE, Dennis Darrell Willis, an infant Garry Mayhew, an infant George E. Brann, Gertrude Brann, Mrs. Ennis Johns, and Virginia Wilborne Brann, Defendants.**

**Civ. A. No. 68–C–16–D.**

United States District Court
W. D. Virginia,
Danville Division.

Sept. 9, 1968.

Ernest G. Garrett, Jr., May, Garrett, Miller & Newman, Richmond, Va., for plaintiff.

Lawrence G. Wilson, Jr., Carter & Wilson, Danville, Va., for Gerald McGhee and guardian ad litem for Dennis Willis.

James Goodson, III, Danville, Va., guardian ad litem for Garry Mayhew.

Frank O. Meade, Meade, Tate & Meade, Danville, Va., for George E. Brann, Gertrude Brann and Virginia Brann.

Charles E. Carter, and Mary H. Williams, Danville, Va., for Mrs. Ennis Johns.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Iowa National Mutual Insurance Company, hereinafter referred to as "Iowa," brought this declaratory judgment action, alleging that it is not liable under its automobile liability policy, issued to Gerald Minor McGhee, for the accident involving the insured on the 25th day of February, 1968. The "Iowa" policy designated a 1951 Ford as the insured automobile, but McGhee was driving a 1961 Oldsmobile when he had the accident on February 25, 1968. McGhee argues that the Oldsmobile replaced the Ford and, therefore, qualifies for coverage under the "Iowa" liability insurance policy as a "Newly Acquired Automobile." The parties have stipulated that the only issue before the court for decision is whether the 1961 Oldsmobile did in fact replace the 1951 Ford so as to qualify for liability insurance coverage as a "Newly Acquired Automobile" under the "Iowa" policy.

McGhee has owned automobiles since 1962 and has always carried liability insurance. Prior to 1966 McGhee owned a 1957 Ford, which was covered by a

policy of liability insurance. Thereafter, McGhee traded the 1957 Ford as part of the purchase price of a 1963 Corvair which he bought from Fuquay Pontiac at Danville, Virginia. He transferred the insurance and license tags from the Ford to the Corvair, all the paper work involved in the transfer being handled by Fuquay Pontiac.

In August, 1966, McGhee exchanged the Corvair as part of the purchase price of a 1966 GTO Pontiac, purchased at Caswell Implement Company, Caswell County, North Carolina. He again transferred the license tags and insurance from the old car to the new Pontiac.

On September 10, 1967, McGhee had an accident in the GTO Pontiac, and the following day he purchased a 1951 Ford from Wrenn Motors in Danville, Virginia. Again he transferred his liability insurance and license tags from the wrecked Pontiac to the 1951 Ford.

Because of his accident while driving the GTO Pontiac, McGhee's liability insurance was not renewed by his insurer, the Dairyland Insurance Company, and McGhee was forced to apply on November 1, 1967, for an assigned risk policy. "Iowa" issued a policy of liability insurance to McGhee, effective November 4, 1967, under the Virginia Assigned Risk Plan. The "Iowa" policy designated the 1951 Ford as the insured vehicle, and is the policy under which McGhee claims coverage in the present dispute.

After applying for the assigned risk policy, McGhee drove the 1951 Ford into the mountains on a fishing trip, where serious problems arose in the Ford's cooling system. To keep the car running McGhee had to stop frequently to refill the radiator. McGhee testified in the deposition filed with the pleadings that the 1951 Ford "was unable to function as an automobile", and the only way the car could be driven was "to stop at every service station and put water in it." Since his 1951 Ford was not operating properly, upon his return from the fishing trip, McGhee decided to buy a new car. McGhee purchased a 1961 Oldsmobile at Fuquay Pontiac, signing the application for title on November 6, 1967.

McGhee used dealer's license plates to drive the 1961 Oldsmobile from Fuquay Pontiac to his home on November 4, 1967, before he signed the application for the title on November 6, 1967. He then returned to Fuquay Pontiac in a dealer's car and drove the 1951 Ford to his home. The following day a service station towed the 1951 Ford from McGhee's home to the station to install a water pump. Then McGhee drove the 1951 Ford back to his home and parked it. The car was still overheating. He then changed the license plates from the 1951 Ford to the 1961 Oldsmobile which he had not driven since he brought it home from Fuquay Pontiac. After he took the license plates off the 1951 Ford and parked it, McGhee began driving the 1961 Oldsmobile and continued to drive *only* the 1961 Oldsmobile until it was damaged in the accident on February 25, 1968.

McGhee worked on the 1951 Ford in December, 1967, and discovered a blown head gasket. He partially remedied the defect in January, 1968, but never fully corrected the situation, so the 1951 Ford was still not in proper condition to be driven. He *never* drove the 1951 Ford between November 5, 1967, and February 25, 1968, while he was driving the 1961 Oldsmobile on his own license plates. After the accident McGhee transferred the license plates from the 1961 Oldsmobile back to the 1951 Ford and began driving the Ford again, even though its cooling system was still defective.

The court must determine whether McGhee while driving the 1961 Oldsmobile had liability insurance under the "Iowa" liability insurance policy. McGhee argues that the 1961 Oldsmobile replaced the 1951 Ford and, therefore, qualifies for coverage under the provision of the "Iowa" policy which agrees to insure a "Newly Acquired Automobile", defining it as follows:

IV (4) Newly Acquired Automobile— an automobile, ownership of which is

acquired by the name insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy. * * *

The narrow issue to be decided is whether the 1961 Oldsmobile replaced the 1951 Ford. In order to make that decision the court must determine the proper construction of the above definition of a "Newly Acquired Automobile".

■ The "Iowa" policy was issued in Virginia, and the accident involving the 1961 Oldsmobile occurred in Virginia. Virginia law controls the determination in this case. But after a thorough reading of counsel's briefs as well as an independent search of the authorities, the court is unable to find any Virginia case that has decided the exact issue now before the court.

One of the most often cited cases involving facts similar to the case at bar is Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483 (1940). Merchants Mutual Casualty Company issued a policy of liability insurance covering a 1930 Pierce-Arrow sedan. The 1930 Pierce-Arrow was not used by the insured between October and December, 1938 because the car was worn out and not fit to be driven, but the car was still registered and had license plates attached. The insured purchased a 1935 Pierce-Arrow car on December 1, 1938, and had an accident while driving the new car shortly thereafter. Merchants Mutual argued that coverage of the 1936 Pierce-Arrow should not be effective until the 1930 Pierce-Arrow had been rendered unusable by the transfer of the registration and license plates to the 1936 car. The court held that since the 1930 car was "worn out, out of repair and not fit to be driven on the public highway", the 1936 car replaced the 1930 car and that the retention of the 1930 car did not prevent liability insurance coverage from attaching to the new car even though the license plates had not been transferred from the retained 1930 car to the newly acquired 1935 car.

Merchants Mutual Casualty Co. v. Lambert, supra, 11 A.2d at p. 361.

However, counsel for "Iowa" argue in their brief that the court's decision should be controlled by Mitcham v. Travelers Indemnity Co., 127 F.2d 27 (4th Cir. 1942). In Mitcham, the insured owned a Buick automobile which was the designated insured vehicle in a liability policy issued by Travelers Indemnity Company. The insured, after the issuance of the liability policy, purchased a Lincoln Zephyr, trading in his mother's car as part of the purchase price. The insured then left his Buick with the motor company to be kept in storage and to be sold if possible. Shortly thereafter, he was involved in an accident while driving the Lincoln Zephyr. It was held in Mitcham (1) that the Lincoln did not in fact replace the Buick and (2) that even if there was a "replacement," the Lincoln was not covered because the insured had not complied with the insurance policy provisions requiring notice of the replacement. The decision to deny coverage in Mitcham was based to a great extent on the failure of the insured to give proper notice, but no notice was required in the case at bar.

The decisions in Mitcham and in Merchants Mutual are not conflicting but are distinguishable on the factual situations. Maryland Indemnity & Fire Ins. Exchange v. Steers, 221 Md. 380, 157 A.2d 803 (1960). In the Mitcham opinion, the Fourth Circuit Court of Appeals recognized the factual distinction:

The evidence supports the finding of the District Judge that the Lincoln Zephyr did not in fact replace the Buick car. Gray still retained title to the Buick and full control over it. At any time he could have taken it from the custody of the Motor Company and put it into use; at any time the Motor Company was privileged to use the car on Gray's behalf in order to demonstrate it to a customer; and in either case it would have been impossible for the company to show that the car was not still covered by the policy if an accident had occurred and liability on

Gray's part had ensued. These circumstances distinguish the case from Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483, upon which the appellant mainly relies, for in that case, although the old car covered by the policy remained in the insured's garage, with license plates attached, after the purchase of the new car, it had not been used by the insured for several months prior thereto, because it was worn out, out of repair, and not fit to be driven on the public highway.

The court agrees with counsel for "Iowa" that the opinion in *Mitcham* is a proper authority in the case at bar. But contrary to the contention of counsel for "Iowa", the court finds the facts in the case at bar to be more similar to the factual situation in *Merchants Mutual* than to the factual situation in *Mitcham*. McGhee, like the insured in *Merchants Mutual,* retained the designated insured vehicle (the 1951 Ford) in a worn out condition, "out of repair, and not fit to be driven on the public highway," and he parked the 1951 Ford and never drove it while using the 1961 Oldsmobile. Furthermore, he took the license plates and registration off of the 1951 Ford so as to relegate it to a legally unusable condition. The court points out that the insurer in Merchants Mutual, 11 A.2d at p. 362, argued:

Coverage on the 1930 car would not cease, and coverage on the 1935 car would not be effective, until the defendant had relegated the 1930 car to an unusable status by transfer of the registration and number plates to the 1935 car * * *"

But this is exactly what McGhee did.

Counsel for "Iowa" also refers the court to Fleming v. Nationwide Mutual Insurance Co., 383 F.2d 145 (4th Cir. 1967), wherein the insured purchased a 1960 Pontiac, but continued to operate his 1962 Ford van which was designated as the insured vehicle in his policy of liability insurance. The insured operated both vehicles for approximately

six weeks before he sold the 1962 Ford van, then alleging that the 1960 Pontiac replaced the 1962 Ford van. This case is clearly distinguishable from the facts in the case at bar. In *Fleming,* the insured operated both automobiles simultaneously. In fact the opinion in *Fleming* points out that the factual situation therein must be distinguished from "factual circumstances indicating that the retained vehicle was physically or legally inoperable at the time that the new vehicle was acquired.", at p. 149. The court in *Fleming* went even further to say at p. 150:

We are not suggesting that in all instances the old vehicle must have been disposed of or have been incapable of further service before the new one can become a true replacement. Under other circumstances than those here present, temporary retention of the old vehicle for a short period of time might not negate an otherwise clear intention that the newly acquired vehicle was to be a replacement for the one covered by the insurance policy.

All the facts in the case at bar indicate that McGhee purchased the 1961 Oldsmobile with the "clear intent" to replace the 1951 Ford. The 1951 Ford was overheating and could not be driven unless the radiator was constantly refilled with water. In effect the car was "out of repair, and not fit to be driven on the public highway." Merchants Mutual Casualty Co. v. Lambert, supra, 11 A.2d at p. 361. So McGhee purchased the 1961 Oldsmobile at Fuquay Pontiac to replace the 1951 Ford. McGhee then transferred the registration and license plates from the 1951 Ford to the 1961 Oldsmobile. Thereafter, McGhee used the 1961 Oldsmobile for his business and social needs, the same purpose for which he had previously used the 1951 Ford. He never drove the 1951 Ford until after the accident on February 25, 1968, which disabled the 1961 Oldsmobile; in fact he had no license plates or registration for the 1951 Ford and could not have legally operated the car before this time. These facts clearly indicate that McGhee pur-

chased the 1961 Oldsmobile to replace the 1951 Ford.

Furthermore, McGhee requested Fuquay Pontiac to transfer the insurance and registration from the 1951 Ford to the 1961 Oldsmobile. Fuquay Pontiac had taken care of the paper work involved in transferring the insurance and registration for McGhee on a previous occasion when he purchased a 1963 Corvair to replace his 1957 Ford prior to 1966. McGhee wanted to follow this same procedure again when he purchased the 1961 Oldsmobile, thinking that Fuquay Pontiac could transfer the insurance and registration to the 1961 Oldsmobile. The fact that McGhee requested Fuquay Pontiac to follow the same procedure when he purchased the 1961 Oldsmobile as they had followed when he purchased the 1957 Ford further indicates that McGhee intended to replace the 1951 Ford with the 1961 Oldsmobile.

 Counsel for "Iowa" does not seriously contend that McGhee did not subjectively intend to replace the 1951 Ford. Rather, the gist of their contention, apparently, is that McGhee did not replace the 1951 Ford within the meaning of the insurance agreement. An Insurance Agreement must be construed liberally in favor of the insured if the language is doubtful or ambiguous. Central Surety and Ins. Corp. v. Elder, 204 Va. 192, 129 S.E.2d 651 (1963); Harleysville Mut. Ins. Co. v. Dollins, 201 Va. 73, 109 S.E.2d 405 (1959). The term "replace" in the insurance agreement with "Iowa" does not require the insured to part with possession of the designated vehicle before coverage will attach to a "Newly Acquired Automobile." If the insurer wants to prevent retention of the designated vehicle, the insurance agreement should clearly specify such a condition. Merchants Mutual Casualty Co. v. Lambert, supra. It is not for the court to read additional terms and conditions into an integrated agreement.

Counsel for "Iowa" emphatically stress the fact that McGhee drove the 1951 Ford home from Fuquay Pontiac on November 4, 1967, and again drove the 1951 Ford home from the service station on the following day, November 5, 1967, in an attempt to show that the 1951 Ford was mechanically operable after McGhee acquired the 1961 Oldsmobile, thereby subjecting "Iowa" to double liability since McGhee could have driven either car at this time. The fact that McGhee drove the 1951 Ford on the highway does not conclusively prove that the car was mechanically in repair and fit for operation on the highways. A car with only one headlight could be driven but no one would contend that such a vehicle was in repair or mechanically fit for use. It is not necessary that an automobile be sold for scrap metal before it can be classified as out of repair and unfit to be driven on the highway. Even though McGhee drove the 1951 Ford on these two occasions, the car still had a defective cooling system. McGhee tried to have the car fixed at the service station, but was unsuccessful. To drive the car, it was still necessary to frequently refill the radiator. McGhee, due to the defect, left the car parked without using it for more than three months. The court finds that the 1951 Ford was mechanically out of repair.

Counsel for "Iowa" contend that "Iowa" would be saddled with double liability if the liability coverage is extended to the 1961 Oldsmobile because McGhee drove the 1951 Ford after driving the 1961 Oldsmobile home from Fuquay Pontiac, and "Iowa" could have been liable for coverage on the 1951 Ford. It is true that the 1951 Ford was covered when driven on November 4th and 5th, 1967, but "Iowa" was not saddled with double coverage because the 1965 Oldsmobile had not at that time become a "Newly Acquired Automobile" within the meaning of "Iowa's" insurance agreement. McGhee had not purchased the 1961 Oldsmobile when he drove it home on the 4th of November. He had not signed the final papers in the transaction nor applied for the title to the car, nor had he made any payment to Fuquay Pontiac. The negotiation for the 1961 Oldsmobile was not completed until the

6th of November. The only time McGhee drove the 1961 Oldsmobile before he parked the 1951 Ford was when he drove it home on dealer's tags, but this trip was covered by Fuquay Pontiac's insurance—not McGhee's. McGhee never drove the 1961 Oldsmobile as a replacing automobile nor even completed the purchase negotiations for the car until after he had ceased driving the 1951 Ford and transferred the license plates to the 1961 Oldsmobile.

As pointed out by counsel for "Iowa" the court must be careful that liability insurance carriers are protected from being saddled with double liability when the insured acquires a replacement automobile. Therefore, most courts require that if a replaced vehicle is retained by the owner, it must be either mechanically or legally inoperable. Fleming v. Nationwide Mutual Insurance Co., 383 F.2d 145 (4th Cir. 1967); Mitcham v. Travelers Indemnity Co., 127 F.2d 27 (4th Cir. 1942). Otherwise coverage is denied on the "Newly Acquired Automobile." "Iowa" was not subject to double liability on its policy issued to McGhee. McGhee had only one set of license plates, and he kept them on the 1961 Oldsmobile continually, rendering the 1951 Ford legally inoperable. It was impossible to drive but one car at any given time with only one set of license plates. Furthermore, the 1951 Ford was mechanically inoperable, requiring constant refilling of the radiator to prevent overheating. As already stated most courts require only that a retained automobile be either mechanically or legally out of repair, but McGhee's retained 1951 Ford was both mechanically and legally out of repair. The court therefore feels that "Iowa" was adequately protected from being saddled with double liability.

For the reasons stated in this opinion and upon full consideration of the facts, the court finds and declares that the 1961 Oldsmobile did replace the 1951 Ford in compliance with provision IV (4) of the "Iowa" liability insurance agreement and that the insured, Gerald Minor McGhee, was entitled to liability coverage with "Iowa" on February 25, 1968, while driving the 1961 Oldsmobile, and it is so adjudged and ordered. Each party shall bear his or its own costs. The purposes of this action having been accomplished, it is ordered stricken from the docket.