## NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY v. CALVIN NYBORG, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF ROBERT DEAN NYBORG, A MINOR, AND OTHERS.

186 N. W. (2d) 702.

April 30, 1971—42458.

*Erickson, Zierke, Kuderer, Utermarck & Sinor,* for appellant.
*Winzenburg & Halloran,* for respondent Salzwedel.
*John W. Flynn* and *Thomas Mooney,* for respondent Deutschman.
*Muir, Lundblad, Meyer & Storey,* for respondent Nyborg.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Appeal from a declaratory judgment ordering plaintiff insurance company, which carried an automobile liability policy on defendant Harley William Salzwedel, to defend any suit and pay any judgment rendered against insured by reason of his liability arising out of an accident in which he was involved on June 5, 1966.

Two issues are raised: (1) Whether at the time of the accident the 1960 Chevrolet station wagon which insured purchased on May 24, 1966, was insured by virtue of the automobile liability insurance policy's clause providing automatic coverage to an automobile replacing a described vehicle; and (2) whether a finding that statements made by plaintiff's agent to Mr. and Mrs. Salzwedel "that they had 30 days in which to apply for a transfer of insurance from one automobile to another automobile" is sufficient under the circumstances to estop plaintiff from denying coverage of the 1960 station wagon, which the insured intended as a replacement vehicle for a 1957 Ford described in the insurance policy.

Defendant Salzwedel is a farmer residing in Heron Lake Township. After living for a number of years in Missouri and Kansas, he returned to farm in Heron Lake Township. He then owned a 1957 Cadillac and a 1950 Dodge pickup truck, insured by two different companies. When the insurance on the Dodge expired, Salzwedel purchased from plaintiff liability insurance on that automobile as well as a farm liability insurance policy. In 1965, Salzwedel bought a 1952 Ford on which plaintiff issued a liability policy. In 1966, Salzwedel purchased a 1957 Ford to replace the 1952 Ford, which had been using excessive amounts of oil. He parked the 1952 automobile in a grove across the highway from his farm buildings and did not drive it thereafter. He mailed a request to plaintiff's agent, Elmer Deutschman, a named defendant, to transfer the insurance on the 1952 Ford to the 1957 Ford. Before Salzwedel had received notice of plaintiff's compliance with that request, plaintiff's agent, Deutschman, visited the Salzwedel farm to audit Salzwedel's farm liability policy. Mr. and Mrs. Salzwedel testified that during that visit Deutschman assured them that transfer of coverage from the 1952 Ford to the 1957 Ford was taken care of, and that in any event they had 30 days within which to effect a transfer.[1] Although Deutschman disclaimed the statement attributed to him, an advisory jury finding adopted by the court specifically found that Deutschman told the Salzwedels that "they had 30 days in which to apply for a transfer of insurance from one automobile to another automobile." In any event, Mr. Salzwedel later

---

[1] The exact statements ascribed to Deutschman by Mr. and Mrs. Salzwedel do not make clear whether they related to the replacement of any automobile described in the policy or only to the replacement of the 1952 Ford. Typical is the testimony of Mrs. Salzwedel: "He came in the door and I said, oh, did you come to see about transferring the insurance. He said, oh, no, that's already been taken care of. And I made some remark about we didn't know whether to drive the car or not, because we didn't know if it was insured, if it had been transferred, and he said, oh, it doesn't make any difference, because you have 30 days to do that any way. It would have automatically been covered."

received an endorsement to his policy showing that coverage had been transferred.

A few weeks later, Mr. Salzwedel submitted a bid application in an attempt to purchase a pickup truck at an auction of surplus government vehicles. However, he placed his bid on the wrong line of the bid form and as a result was the high bidder on a 1960 Chevrolet station wagon which he acquired on May 24, 1966. Deciding to use the station wagon as a family car in place of the 1957 Ford, Salzwedel parked the latter car near the 1952 Ford, transferred its good tires to the 1960 station wagon, and advertised the 1957 automobile for sale. Although it was apparently mechanically operable, there was testimony that the 1957 Ford had a defective clutch and that one door would come open when the automobile hit a bump. It was not driven again until it was sold.

While driving the 1960 station wagon on June 5, 1966, less than 2 weeks after acquiring the vehicle, Salzwedel was involved in an accident. His wife notified Deutschman of the accident. The Salzwedels had not previously notified plaintiff of their desire to transfer coverage from the 1957 Ford to the 1960 station wagon, apparently believing they had 30 days to notify the insurer. Plaintiff wrote Salzwedel a letter denying liability on the ground that the station wagon was not insured by its policy. Thereafter plaintiff brought this declaratory judgment action to restrain Salzwedel, Deutschman, and Calvin Nyborg, the parent and natural guardian of a minor injured in the accident, from instituting any action against plaintiff for recovery of money damages.

■ The insurance policy in question provides that the insurer will pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage "arising out of the ownership, maintenance or use of the owned automobile," and that the insurer will defend any suit arising therefrom. The definition of "owned automobile" in the contract includes—

"\* \* \* a private passenger \* \* \* automobile \* \* \* ownership \* \* \* of which is acquired by the named insured during the policy period, provided

"(1) it replaces a described automobile \* \* \*."

Thus, according to the terms of this policy, Salzwedel had *automatic* liability coverage on an automobile which replaced a described automobile. No notice was necessary. The issue then is whether the 1960 Chevrolet did in fact replace the 1957 Ford.

The controlling Minnesota decision on that issue, handed down after the trial in this case, is Fitch v. Bye, 288 Minn. 344, 180 N. W. (2d) 866. In that case we held:

"\* \* \* [A]n owned vehicle not described in the policy replaces a described vehicle under only two conditions: (1) When the replaced described vehicle is not operable and for practical purposes cannot be rendered operable; or (2) the described vehicle has been sold, or possession has been transferred for purposes of sale or because title has otherwise been divested." 288 Minn. 349, 180 N. W. (2d) 869.

We have also said that "an intention to replace is not enough." Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 390, 116 N. W. (2d) 605, 609.

The Fitch rule is directly in point in the instant case. Since the undisputed facts are that the 1957 Ford was operable and had not been sold but was still owned by and in the possession of Salzwedel, we cannot affirm the lower court's judgment that the 1960 station wagon had replaced the 1957 Ford automobile named in the policy at the time of the accident. The explicit definition of "replaces" in Fitch removes all doubt as to the disposition of this issue.

The rule in Fitch is consistent with the majority rule that "coverage will be extended to newly acquired vehicles under these provisions only if the replaced vehicle has been disposed of by insured or is inoperable or incapable of further service at the time of the replacement." 7 Blashfield, Automobile Law and

Practice (3 ed.) § 316.5, p. 667. It may be noted, however, that there are well-reasoned decisions which impose liability on insurers in factual situations similar to the instant case. See, e. g., Merchants Mutual Cas. Co. v. Lambert, 90 N. H. 507, 11 A. (2d) 361; Iowa Nat. Mutual Ins. Co. v. McGhee (W. D. Va.) 292 F. Supp. 176, affirmed (4 Cir.) 408 F. (2d) 4; Nationwide Mutual Ins. Co. v. Mast, 52 Del. 127, 153 A. (2d) 893. The general rationale of these decisions is that the insurance agreement should clearly provide that replacement of a described vehicle does not occur if the insured retains the described vehicle and it is in operable condition. Absent such a definition of "replaces," the insurance contract is construed against the company which chooses the contractual language. While we have concluded, for compelling reasons expressed in Fitch, that the replacement contemplated by insurance contracts of this type is a replacement in fact, we are constrained to observe that needless misunderstandings and disputes with insureds could be eliminated if liability insurance companies were to include in the policy provisions a more precise definition of a replacement vehicle.

■ Defendants Salzwedel and Nyborg insist that the judgment below can be sustained on the basis that the plaintiff is estopped from denying coverage because of its agent's representations to the Salzwedels. Although the issue of whether the representations testified to by the Salzwedels were in fact made was submitted to the jury without objection as to the form of the question and the jury's answer was adopted by the court, the record does not clearly establish whether the claim of these defendants that plaintiff was estopped from denying coverage supplied any significant basis for the court's conclusions of law declaring that plaintiff is required to afford coverage for the accident. Since the Fitch case had not yet been decided, and the principal dispute between the parties was the proper interpretation of the language of the policy, it is understandable that no motion seeking an amendment to the findings or conclusions of law was made and thus that the trial court was not afforded an

opportunity to clarify the basis of the decision. But however desirable it would be to end this litigation with this appeal, the insurmountable difficulty is that the court's findings do not include a resolution of fact questions essential to a determination of whether or not the doctrine of estoppel should be applied. The critical dispute about whether the agent's representations that the policy gave Salzwedel "30 days in which to apply for a transfer" related only to the prior replacement of the 1952 Ford or related to any future replacement of an automobile described in the policy was resolved by the jury and the court only by implication. Because of the overlapping relationship of that question to the issue of interpreting the language of the policy, it is not only hazardous but unfair to the parties and the trial court for an appellate court to assess whether the evidence adequately supports the finding made. Of equal importance, whether the insured under the circumstances reasonably relied on the representations made has not been resolved. 6B Dunnell, Dig (3 ed.) § 3191. Clearly, upon this record, these are disputed issues of fact which cannot be resolved as a matter of law despite the urging of the parties. Consequently, we have no choice but to remand the case to allow the trial court, with or without taking additional testimony, to decide whether plaintiff is estopped from denying coverage, even though under Fitch v. Bye, *supra,* the automobile involved in the accident did not replace a described vehicle within the meaning of the insurance contract.

Reversed and remanded.