DEWEY T. YOUNG AND LACY BOWLING YOUNG, PLAINTIFFS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE AETNA CASUALTY AND SURETY COMPANY, RUBY MOORE, LINDA JACKSON AND COLDEN SPEARS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ELIZABETH SPEARS, DEFENDANTS

— AND —

RUBY MOORE, LINDA JACKSON AND COLDEN SPEARS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ELIZABETH SPEARS, THIRD-PARTY PLAINTIFFS v. PENNSYLVANIA LUMBERMEN'S MUTUAL INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY AND SOUTH CAROLINA INSURANCE COMPANY, THIRD-PARTY DEFENDANTS

No. 7310SC512

(Filed 25 July 1973)

1. Insurance § 84— automobile liability policy — replacement vehicle

A "replacement vehicle" within the purview of an automobile liability policy must be (1) acquired after the issuance of the policy on the named vehicle, (2) and during the policy period, and (3) it must replace the vehicle described in the policy (4) which must be disposed of or be incapable of further service at the time of replacement.

2. Insurance § 84— automobile liability policy — replacement vehicle

Where an insurance company issued a liability policy covering a 1961 Oldsmobile ambulance and a 1960 Plymouth ambulance, the 1961 Oldsmobile became inoperative on 27 June 1970, insured purchased and placed in service a 1966 Mercury ambulance on that date, the medical supplies and emergency equipment in the Oldsmobile were transferred to the Mercury, and the Oldsmobile was placed in a storage shed and was not removed therefrom until after the Mercury was involved in an accident on 30 September 1970, the Oldsmobile ambulance was "incapable of further service" on the date of the accident and the Mercury was a "replacement vehicle" within the terms of the liability policy, and the insured was not required to notify the insurance company of its acquisition.

APPEAL by defendant Aetna Casualty and Surety Company (Aetna) from *Canaday, Judge,* 4 December 1972 Civil Session of WAKE County Superior Court.

On 30 September 1970 John W. Core, Jr., was involved in a collision between a vehicle he was driving and another operated by plaintiff Dewey T. Young, in which Lacy B. Young was a passenger. Both Youngs were injured. On 10 January 1972 Dewey T. Young recovered judgment against Core in the amount of $10,000, and Lacy B. Young recovered judgment in the amount of $7,000.

Core's insurance carrier, Aetna, denied coverage and would not pay the judgment. The Young's uninsured motorist insurance carrier, State Farm Mutual Automobile Insurance Company, (State Farm) paid the Youngs' judgment recovery, and now, being subrogated to the Youngs' legal rights, contends that Aetna was liable on its insurance policy. The Youngs are no longer involved in the suit.

Additionally, Ruby Moore, Linda Jackson, Colden Spears, and Elizabeth Spears, a minor (now deceased), were riding in the vehicle operated by Core at the time of the accident. Moore, Jackson and Spears contended that they suffered personal injury as a proximate result of Core's negligence, and have filed claims against Core's insurer, Aetna. Each having been notified by Aetna that it denies coverage, they also filed claims against their respective uninsured motorist insurance carrier, which companies have been joined in this action. Moore's uninsured motorist insurer is Pennsylvania Lumbermen's Mutual Insurance Company (Pennsylvania); Jackson's uninsured motorist insurer is Nationwide Mutual Insurance Company (Nationwide); and Colden Spears' uninsured motorist insurer is South Carolina Insurance Company.

At the time of the accident Core was doing business as Dunn Ambulance Service and operating a 1966 Mercury ambulance. Aetna had issued an automobile liability policy covering a 1961 Oldsmobile ambulance and a 1960 Plymouth ambulance, but not the 1966 Mercury.

Judge Canaday, on 13 December 1972, concluded that the 1966 Mercury was a replacement vehicle, and that it was an insured vehicle. It was ordered that State Farm (the Youngs' insurance carrier) recover from Aetna the sum of $17,000 with interest and costs, and that Pennsylvania, Nationwide, and

South Carolina insurance companies had no liability on their policies arising out of the accident.

Defendant Aetna appealed; third-party defendants Moore, Jackson and Spears also appealed.

*Smith, Anderson, Blount & Mitchell by James D. Blount, Jr., for defendant appellee State Farm Mutual Automobile Insurance Company.*

*Anderson, Nimocks & Broadfoot by Henry L. Anderson for third-party defendant appellee Pennsylvania Lumbermen's Mutual Insurance Company.*

*Bailey, Dixon, Wooten & McDonald by Wright T. Dixon, Jr., and John N. Fountain for third-party defendant appellee Nationwide Mutual Insurance Company.*

*Edgar R. Bain for third-party defendant appellee South Carolina Insurance Company.*

*Young, Moore & Henderson by Charles H. Young, Jr., and J. C. Moore for defendant appellant Aetna Casualty and Surety Company.*

*Bryant, Jones, Johnson, Hunter & Greene by C. McFarland Hunter for third-party plaintiff appellants Ruby Moore, Linda Jackson and Colden Spears.*

CAMPBELL, Judge.

Core's automobile liability insurance policy insured only two named vehicles, a 1961 Oldmobile and a 1960 Plymouth. That policy did provide, however, that automatic coverage would be extended to a newly-acquired vehicle if it *replaced* an owned automobile covered by the policy.

Judge Canaday made the following pertinent findings of fact:

1. That Core's insurance policy issued by Aetna was in full force and effect on 27 June 1970 on which date Core acquired the 1966 Mercury automobile not owned by him prior thereto.

2. That on 30 September 1970, the date of the accident involving the 1966 Mercury, the Aetna policy was in full force and effect.

3. That on 27 June 1970, while on an emergency trip to Duke Hospital in Durham, North Carolina, the 1961 Oldsmobile emergency vehicle developed mechanical trouble and that Core telephoned his wife and instructed her to purchase the 1966 Mercury.

4. Upon his return from Durham, Core and his wife removed all of the medical supplies and emergency equipment from the 1961 Oldsmobile and transferred that equipment to the newly-acquired 1966 Mercury.

5. That the 1961 Oldsmobile was placed in a shed at the rear of the Core property and was never moved from its position under the shed until after the accident, at which time it was repaired.

6. That Mr. Core occasionally started the engine of the 1961 Oldsmobile, but eventually the battery went dead; that for one period, Mr. Core spread peanuts in the back of the Oldsmobile to dry; that grass grew up around the vehicle.

7. That Core removed the license tag from the 1961 Oldsmobile and placed it on the 1960 Plymouth; at the same time he removed the license tag from the 1960 Plymouth and placed it on the newly-acquired 1966 Mercury.

8. That Core intended ultimately to dispose of the 1960 Plymouth after he repaired the Oldsmobile, which then would be used as a backup ambulance to the 1966 Mercury.

9. That on 4 September 1970 an employee of the North Carolina Department of Health inspected the ambulances of Dunn Ambulance Service and certified as operable and approved for use the 1960 Plymouth and the 1966 Mercury; the 1961 Oldsmobile was indicated "not in service."

Judge Canaday then concluded that the 1966 Mercury was a newly-acquired vehicle which replaced an owned automobile covered by the Aetna insurance policy, and that inasmuch as the 1966 Mercury was acquired to replace an owned automobile covered by the policy, Core was not required by the terms of the policy to notify Aetna of its acquisition.

There is ample evidence of a competent nature to support the findings of fact of the trial court. If the trial judge's findings are supported by competent evidence, such findings are as conclusive as the verdict of a jury. They are binding on this

Court. *Insurance Co. v. Shaffer,* 250 N.C. 45, 108 S.E. 2d 49 (1959). Whether the newly-acquired Mercury was a replacement vehicle within the meaning of the liability insurance policy is a mixed question of law and fact and is to be settled with the interpretation of the insurance policy in light of the facts found.

[1]  In the *Shaffer* case our Supreme Court defined a "replacement" vehicle: A replacement vehicle must be (1) acquired after the issuance of the policy on the named vehicle, (2) and during the policy period, and (3) it must replace the vehicle described in the policy (4) which must be disposed of or be incapable of further service at the time of the replacement.

In the instant case the evidence supports the finding that (1) the 1966 Mercury was acquired after the issuance of the Aetna policy; (2) the Mercury was acquired during the policy period; (3) after the Mercury was acquired it was operated to the exclusion of the 1961 Oldsmobile.

[2]  The question determinative of this appeal, then, is, what is the meaning of the term "incapable of further service"?

The appellees contend that the term means "out of repair and not fit to be driven at the time"; "not operable at the time." *Insurance Co. v. McGhee,* 292 F. Supp. 176 (W.D. Va. 1968); *Lynam v. Assurance Corporation,* 218 F. Supp. 383 (D. Del. 1963).

The appellants, on the other hand, contend that the term means "not operable at the time *and* for practical purposes cannot be rendered operable." *Nationwide Farmers Union Property and Casualty Co. v. Nyborg,* 290 Minn. 191, 186 N.W. 2d 702 (1971); *Nationwide Insurance Co. v. Ervin,* 87 Ill. App. 2d 432, 231 N.E. 2d 112 (1967).

In formulating its rule that a replacement vehicle must replace one which is "incapable of further service," the *Shaffer* opinion of our Court cited *Casualty Co. v. Lambert,* 11 A. 2d 361 (N.H. 1940). The rule itself as enunciated in *Shaffer,* and upon review of the facts in *Lambert,* clearly indicates that the insured need not dispose of title or control over the replaced vehicle.

In *Lambert* the defendant's automobile was retained by him, parked in a garage, and although never driven, it was licensed for operation in the defendant's name. The court held that the new vehicle was intended to be a replacement, and was

so regardless of whether defendant retained possession of the old automobile.

Core, in his business, never used more than two ambulances and was not equipped to do so. One ambulance was used as a backup vehicle for the other.

The evidence in the instant case clearly indicates that the 1961 Oldsmobile and the 1966 Mercury were not capable of being used simultaneously and were not intended to be. The Mercury was in fact driven exclusively and the Plymouth remained the backup vehicle as it had been before the Oldsmobile was removed from service. Use of the 1961 Oldsmobile was abandoned; and abandonment of use due to inoperative condition of the vehicle, we feel, is sufficient to establish the relationship of replacement vehicle. The possible exposure of Aetna remained the same at all times.

No error.

Judges HEDRICK and BALEY concur.