Argued October 15, 1973, reversed and remanded April 11, 1974

LAMBERT, *Appellant, v.* THE NORTHWEST
INSURANCE COMPANY, *Respondent.*

520 P2d 891

*Merrill G. Emerick,* Portland, argued the cause for appellant. With him on the briefs were Edward H. Warren, and Hershiser, Mitchell & Warren, Portland.

*Larry Dawson,* Portland, argued the cause for respondent. With him on the brief were Schouboe, Cavanaugh & Dawson, Portland.

BRYSON, J.

Plaintiff brought this action on an automobile liability insurance contract to recover damages for the amount of a judgment and defense expenses plaintiff was required to pay as the result of an automobile accident in which he was involved. Defendant had issued to plaintiff an automobile insurance policy which described plaintiff's insured vehicle as a 1955 Chevrolet. When the accident occurred plaintiff was driving a 1964 Pontiac. Plaintiff claimed that the 1964 Pontiac qualified as a "newly acquired automobile" under the policy, replacing the 1955 Chevrolet, entitling him to full coverage.

The defendant moved for a directed verdict. However, the plaintiff requested "to have the jury

hear this matter and allow the defendant to move for a judgment N.O.V." ORS 18.140 (2). The court submitted the matter to the jury, which returned a verdict in favor of plaintiff. On motion, the trial court granted judgment for the defendant notwithstanding the verdict. The plaintiff appeals from that order, contending "there was evidence from which the jury could reasonably conclude that the 1964 Pontiac vehicle was a 'replacement vehicle' within the terms of the 'newly acquired automobile' section of defendant's policy."

We view the evidence in a light most favorable to the plaintiff. In February 1968 plaintiff purchased from defendant an automobile liability insurance policy covering his 1962 Pontiac. On September 17, 1969, plaintiff transferred the coverage under this policy to a 1955 Chevrolet which he had acquired. On February 12, 1970, plaintiff purchased a 1964 Pontiac that needed considerable repairs to become operable. During the next three months plaintiff worked at repairing the 1964 Pontiac and used the 1955 Chevrolet for transportation. In the middle of May 1970 plaintiff completed repairs on the 1964 Pontiac and had the same licensed by June 3, 1970. Plaintiff then removed the battery from the 1955 Chevrolet and installed it in the 1964 Pontiac. From that date, plaintiff used the 1964 Pontiac exclusively as his means of transportation until the time of his accident. Plaintiff's 1962 Pontiac was at all times used by his wife for transportation. It was not a "newly acquired automobile." Defendant's brief makes no contention that the ownership of the 1962 Pontiac is a factor in this case.

On June 25, 1970, while driving the 1964 Pontiac, plaintiff was involved in an accident with one Dr. Leroy Miller. Plaintiff informed his insurance agent

of the accident on the next day. One week later defend-
ant informed plaintiff that the policy did not cover the
1964 Pontiac.

Dr. Miller brought suit against plaintiff for
property damages to the Miller car. The case was
settled by plaintiff confessing judgment for $1,684.25
and $450 attorney fees which he paid. Defendant re-
fused to pay any part of this loss. Plaintiff then filed
this action, claiming coverage under the following
policy provision:

> "(4) Newly Acquired Automobile—An auto-
> mobile, ownership of which is acquired by the
> named insured or his spouse if a resident of the
> same household, if (1) it replaces an automobile
> owned by either and covered by this policy, or the
> company insures all automobiles owned by the
> named insured and such spouse on the date of its
> delivery, and (2) the named insured or such spouse
> notifies the company within thirty days following
> such delivery date; but such notice is not required
> under coverages A, B and division 1 of coverage C
> if the newly acquired automobile replaces an owned
> automobile covered by this policy.[①] * * * The
> named insured shall pay any additional premium
> required because of the application of the insurance
> to such newly acquired automobile."

The trial court submitted the issue of "replace-
ment vehicle," under the terms of the policy, to the
jury with instructions, and the jury returned a plain-
tiff's verdict.

Plaintiff contends that he adduced evidence from
which the jury could reasonably conclude that the 1964
Pontiac replaced the 1955 Chevrolet and that "re-
placement vehicle" is a factual question to be de-
termined by the jury.

---

[①] Notice not involved in this case as claimed coverage is under
"B". (property damage liability).

The defendant argues that "[p]laintiff failed to prove the replacement" of the 1955 Chevrolet with the 1964 Pontiac and that more than "mere intention to dispose of the described car [described in insurance policy] at some indefinite time" is necessary to impose liability on the defendant. Defendant relies upon *National Farmers Union Property & Cas. Co. v. Nyborg,* 290 Minn 191, 186 NW2d 702 (1971), and *Fitch v. Bye,* 288 Minn 344, 180 NW2d 866 (1970), wherein the Minnesota court held that "* * * an owned vehicle not described in the policy replaces a described vehicle under only two conditions: (1) when the replaced described vehicle is not operable and for practical purposes cannot be rendered operable; or (2) the described vehicle has been sold, or possession has been transferred for purposes of sale or because title has otherwise been divested." We are not persuaded by the reasoning of the Minnesota court. Defendant also relies upon *National Indemnity Company v. Giampapa,* 65 Wash 2d 627, 399 P2d 81 (1965). In *National Indemnity Company v. Giampapa* the language in the insurance policy was identical to that found in the insurance policy in the case at bar. However, in that case the insured owned two operable automobiles when he purchased his insurance policy and named only one car as the described car. In other words, it was not a "newly acquired automobile" and therefore the case is distinguishable on the facts from the case at bar. Nevertheless, under the facts of that case, the Washington court held that the second car was covered by the automatic insuring agreement.

■ At the trial one of the principal points of controversy concerned the operability of plaintiff's 1955 Chevrolet. The inoperability of the described vehicle is only one of several factors to be considered in de-

termining if there has been a replacement. The intent of the insured, the actual use of the new automobile, and a sale of or an attempt to sell the vehicle described in the policy may also indicate that replacement has taken place. *See* 12 G. Couch, Cyclopedia of Insurance Law § 45:209 through § 45:215. *See also, Adams v. Covenant Security Insurance Company,* 465 SW2d 32 (Mo App 1971).

■ In most cases the issue of replacement is one of fact for the jury. *Patterson v. Insurance Co. of North America,* 6 Cal App 3d 310, 317, 85 Cal Rptr 665, 669 (1970). A review of the testimony reveals that plaintiff introduced evidence that the 1964 Pontiac replaced the 1955 Chevrolet. The plaintiff testified that he purchased the 1964 Pontiac with the intention of refurbishing it to replace the 1955 Chevrolet; that he repaired the Pontiac over a period of three months, and on June 3, 1970, three weeks before the accident, he began driving the 1964 Pontiac as his exclusive means of transportation. Plaintiff did not advertise the 1955 Chevrolet for sale, but he testified that the cost of advertising was probably more than the car was worth as he paid only $35 for the car when he purchased it. Two of plaintiff's acquaintances testified that they knew the 1955 Chevrolet was for sale at the time of the accident. The defendant called no witnesses and offered no evidence to rebut this testimony.

■ We believe this evidence created a jury question on the issue of replacement, and there is substantial evidence to support the jury's verdict. The order allowing judgment notwithstanding the verdict is reversed and the case is remanded with instructions to reinstate the judgment on the jury's verdict.

Reversed and remanded.